IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**SONJA THERESE BROWN**                                                        **PLAINTIFF**

v.                                                               No. 3:24-cv-00359-MPM-RP

**HERNANDO MUNICIPAL COURT,** *et al.*                           **DEFENDANTS**

### MEMORANDUM OPINION

This matter comes before the Court on Defendants', Hernando Police Department, Hernando Municipal Court, Andrew Stovall, Cassandra Perry, Jeremy Harris, Karmesha Richmond, Adam B. Emerson, Timothy Algee, Hunter Solomon, Russell Jordan, Shane Ellis, and Shermonica Wilson (collectively, "Defendants"), Motion for Judgment on the Pleadings [31]; Motion to Strike Plaintiff's Sur-Reply [44]; *pro se* Plaintiff Sonja Therese Brown's ("Ms. Brown") Motion to Strike Scandalous Material [37]; and Motion for Interlocutory Injunction and Temporary Restraining Order [46]. The Court has reviewed the record, along with relevant case law and evidence, and is now prepared to rule.

### RELEVANT BACKGROUND

On August 3, 2023, Ms. Brown was arrested for driving without a tag light, failing to drive in the proper lane while traveling slower than the normal speed, driving with a suspended driver's license and possession of a controlled substance.[1] Ms. Brown alleges the stop was unlawful, and that Officer Karmesha Richardson pulled down Ms. Brown's work pants, which she claims was sexual assault.

---

[1] The Court takes judicial notice of Ms. Brown's criminal case records. *See Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (finding that state-court records "fall squarely within the ambit of" Federal Rule of Evidence 201(b) allowing courts to take judicial notice of them.).

1

Ms. Brown appeared before the Hernando Municipal Court where she was formally charged with the four offenses before being released. Ms. Brown failed to appear at a scheduled hearing and a bench warrant was issued. On April 12, 2024, Ms. Brown was arrested and then charged with contempt of court to which she posted bond and was released. Ms. Brown alleges she was not allowed to file affidavits, and any motions she did file were unanswered. She also claims she made Freedom of Information Act requests that went unanswered.

On September 25, 2024, Ms. Brown was found guilty of contempt of court, driving with a suspended license, and failure to drive in the proper lane charges. She was found not guilty on the no tag light charge. She was ordered to periodically appear in court as a condition of her release. She found this condition difficult to meet and on November 20, 2024, a new bench warrant was issued for her arrest for failure to appear in court.

On November 19, 2024, Ms. Brown filed her 42 U.S.C. § 1983 complaint [1] against Defendants for allegedly violating her constitutionally protected rights and for violating sections of the Mississippi State Constitution. She requests millions of dollars in damages, the termination of multiple officers, and demands the arrests, convictions and fines enforced against "any… people" by the Hernando police department and Hernando Municipal Court to "be overturned post haste." Ms. Brown's complaint also lists claims of impersonation of an officer, sexual assault, unlawful search and seizure, dereliction of official duty, and malicious prosecution.

Defendants responded to the complaint and filed this motion for judgment on the pleadings [31]. Ms. Brown then filed a motion to strike [37] the mentions of her drug possession charge. Additionally, Ms. Brown filed a sur-reply [43] to Defendants' motion for judgment on the pleadings. Defendants then filed a motion to strike Ms. Brown's sur-reply or leave to file sur-rebuttal [44]. Ms. Brown also filed a motion for interlocutory injunction or temporary restraining

order [46] to prevent any party or their agents from enforcing or issuing warrants or fines against her due to fears of retaliation or reputational harm she alleges to have suffered.

## STANDARD OF REVIEW

A motion for judgment on the pleadings serves a similar function to a Rule 12(b)(6) motion to dismiss. "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate only if material facts are not in dispute and questions of law are all that remain. *Voest–Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998). Moreover, in ruling on a motion for judgment on the pleadings, "the district court is confined to the pleadings and must accept all allegations contained therein as true." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (citing *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It is not necessary that a complaint contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must liberally construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts as true. *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005).

3

It is the duty of the trial judge to hold *pro se* complaints to less stringent standards than proper pleadings drafted by lawyers. *Hepperle v. Johnston*, 544 F.2d 201, 202 (5th Cir. 1976). The Fifth Circuit has held that "[g]enerally a district court errs in dismissing a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). However, "[t]he district court may dismiss an action on its own motion under Rule 12(b)(6) 'as long as the procedure employed is fair.'" *Id.* In *Bazrowx*, the Fifth Circuit found that "the district court erred in failing to give Appellant notice of the court's intention to dismiss his suit or an opportunity to amend his complaint[,]" but held that "[s]uch error may be ameliorated ... if the plaintiff has alleged his best case, or if the dismissal was without prejudice." *Id.* (footnote omitted). The Fifth Circuit has clarified that a court can consider a plaintiff to have asserted his best case when the plaintiff has had a "fair opportunity to make out [his] case." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986).

## ANALYSIS

I. **Motion for Judgment on the Pleadings**

Ms. Brown brings § 1983 claims against 13 defendants. To streamline the analysis, the Court will group Defendants by their raised applicable defenses to determine if Ms. Brown's claims are sufficient. The analysis will evaluate the claims as to improperly joined parties; judicial immunity; prosecutorial immunity; qualified immunity; and whether the claims survive against a municipality.

a. **Improper Parties**

A basis for dismissal of the claims against the Hernando Police Department is that a police department is not a proper defendant. The capacity of an entity to be sued is governed by state law. Fed. R. Civ. P. 17(b)(3). The Mississippi Code authorizes suit against "[e]very municipality of this

state." Miss. Code Ann. § 21-17-1(1). The Mississippi Supreme Court has held that it does not authorize a separate suit against a municipality's police department. *See e.g.*, *Brown v. Thompson*, 927 So.2d 733, 737 (Miss. 2006) (holding that a sheriff's department does not enjoy a separate legal existence apart from the county in which it operates and is therefore not subject to suit). Ms. Brown's claims against the Hernando Police Department fail because Mississippi law does not authorize suits against police departments.

Similarly, the claims against the Hernando Municipal Court must be dismissed because a municipal court is not a legally cognizable entity to be sued. "In order for a plaintiff to sue a city department, it must enjoy a separate legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (internal citations omitted). "Unless the political entity that created the department has taken 'explicit steps to grant the servient agency with jural authority,' the department lacks the capacity to sue or to be sued." *Crull v. City of New Braunfels, Texas*, 267 F. App'x 338, 341 (5th Cir. 2008) (citing *Darby*, 939 F.2d at 313). Defendants assert that the Hernando Municipal Court is merely a department of the City of Hernando and is not a legal entity capable of being sued, and Ms. Brown has not claimed or established otherwise. Therefore, Ms. Brown's claims are not authorized against the Hernando Municipal Court.

      b. **Judicial Immunity**

Under the doctrine of judicial immunity, judicial officers are immune from a suit for money damages for acts performed in the exercise of their judicial function. *Mireles v. Waco*, 502 U.S. 9, 10 (1991). Indeed, "[j]udicial immunity is an immunity from suit and not just from the ultimate assessment of damages." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005). Judicial immunity may be pierced in two circumstances: (1) "a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity"; and (2) "a judge is not immune

from actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Bowling v. Roach*, 816 Fed. App'x 901, 906 (5th Cir. 2020) (quoting *Mireles*, 502 U.S. at 11–12).

Four factors determine whether a judicial officer's actions are judicial in nature: (1) whether the acts are a normal judicial function; (2) whether the acts occurred in a courtroom or other judicial space; (3) whether the complained of acts relate to a case pending before the judicial officer; and (4) whether the acts relate directly to an appearance before the judicial officer in his official capacity. *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993). Section 1983 also provides absolute judicial immunity to judicial officers against claims for injunctive relief: "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

In this case, Ms. Brown raised § 1983 claims against Judge Adam B. Emerson and, the still unidentified, Judge John Doe for actions they allegedly took outside of their judicial role against her during her criminal proceedings. Judge Emerson was not mentioned in Ms. Brown's factual allegations, and her claims against Judge John Doe arise out of the Judge's ruling on her constitutional defenses in her criminal case. Ms. Brown asserts broad allegations against the judges for alleged due process violations, but she stated no facts showing that the judges acted in a nonjudicial manner or in absence of jurisdiction.

All the claims against the judges arise from their conduct in the courtroom or about her case and Ms. Brown has not alleged otherwise. She did not plead any facts indicating that their actions were taken outside of the scope of their judicial duties or that they lacked jurisdiction to make rulings on her criminal charges to allow this Court to infer that their actions were outside the

protections of judicial immunity. Both Judge Emerson and Judge John Doe, who has still not been identified, qualify for judicial immunity. The claims raised against them must be dismissed.

### c. Prosecutorial Immunity

Ms. Brown's claims against Hernando Prosecutor, Russell Jordan, are based on allegations that he maliciously prosecuted her because the charges against her were "bogus" and that he was not acting in his official capacity. In response, Prosecutor Jordan raises the defense of prosecutorial immunity. The Supreme Court extended absolute immunity for § 1983 claims to state prosecutors in *Imbler v. Pachtman*, 424 U.S. 409 (1976). The Supreme Court ultimately concluded that state prosecutors are absolutely immune from § 1983 damages claims based on activities "intimately associated with the judicial phase of the criminal process." *Id.* at 430-31.

This immunity includes the decision to file or not file criminal charges, and when to file them. *Quinn v. Roach*, 326 F. App'x. 280, 292 (5th Cir. 2009). Ms. Brown takes issue with Mr. Jordan's decision to prosecute her based on the criminal charges arising from her initial traffic stop and arrest and his alleged failure to answer her filed motions in her criminal case. None of Ms. Brown's allegations against Mr. Jordan affect his immunity protections. A prosecutor's decision to file criminal charges is squarely within activities "intimately associated with the judicial phase of the criminal process." *See Imbler*, 424 U.S. at 30. Ms. Brown's allegations do not indicate that Mr. Jordan acted outside of the scope of the prosecutorial immunity standard. As such, Mr. Jordan's decision to prosecute Ms. Brown entitles him to prosecutorial immunity, and all claims against him must be dismissed.

### d. Qualified Immunity

Ms. Brown alleges that Defendants violated her First, Fourth, Fifth, Sixth, Ninth, Eleventh, Thirteenth, Fourteenth, and Sixteenth Amendment rights. Her 42 U.S.C. § 1983 claim is based on

the actions of Defendants during her initial traffic stop and arrest, particularly her pants being pulled down during a search; alleged interference with her Freedom of Information Act requests; and an alleged conspiracy to deprive her rights among a multitude of violations raised in her complaint. Defendants Andrew Stovall, Cassandra Perry, Jeremy Harris, Karmesha Richmond, Timothy Algee, Hunter Solomon, Shane Ellis, and Shermonica Wilson raised a qualified immunity defense in response to Ms. Brown's claims against them.

42 U.S.C. § 1983 allows individuals to seek redress when someone acting under the authority of state law "subjects" them to a deprivation of rights or "causes" them "to be subjected" to a deprivation of rights. Generally, a plaintiff asserting a claim under 42 U.S.C. § 1983 must (1) allege the deprivation of a right secured by the Constitution or federal law and (2) demonstrate that the alleged violation was committed by a person acting under color of state law. *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

Qualified immunity is a judicially created legal doctrine which "shields federal and state officials from money damages." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant "pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion," the burden shifts to the plaintiff to "rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997). "The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir.2001)). The plaintiff, not the defendant, must do the majority of the work in the qualified immunity context.

In this case, Defendants Stovall, Harris, Richardson, Algee, Solomon, Ellis and Wilson are members of the police force and Defendant Perry is the Municipal Court Clerk. All the named defendants are government officials whose positions involve the exercise of discretion, so they are able to raise a good faith qualified immunity defense. *See e.g. Pearson v. Callahan*, 555 U.S. 223, 230-31 (2009) (allowing police officers to raise a qualified immunity defense in response to 42 U.S.C. § 1983 claims raised against them by an arrestee); *Burnett v. Denman*, 368 F. App'x 603, 604 (5th Cir. 2010) (allowing a court clerk to successfully raise a qualified immunity defense in response to a § 1983 claim). The burden has shifted to the plaintiff, Ms. Brown, who has responded to Defendants' qualified immunity motion.

To rebut a qualified immunity defense, the plaintiff must have "alleged a violation of a constitutional right and whether the right at issue was 'clearly established' at the time of the alleged violation." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (citing *Pearson v.* Callahan, 555 U.S. 223, 232 (2009)). The Supreme Court has instructed that "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft*, 563 U.S. at 735.

Ms. Brown has alleged violations of her constitutional rights, which form the basis for her § 1983 claim against Defendants. At the judgment on the pleadings stage, the Court will accept the allegations that Defendants violated Ms. Brown's rights as she claims in her complaint. *See Hughes*, 278 F.3d at 420 (holding that the district court must accept all allegations in the pleadings as true in the judgment on the pleadings stage of litigation). Even assuming the allegations in her complaint are sufficient to meet the first element, she has not cited sufficient case law to show that the rights violated were clearly established. *See Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (The burden proof to show that an officer violated a clearly established law is "heavy.").

9

Regarding the clearly-established-right prong, "[a] right is 'clearly established' if it is 'one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Cope*, 3 F.4th at 204 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "Unless existing precedent 'squarely governs' the conduct at issue, an official will be entitled to qualified immunity." *Id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)).

Defendants assert that they were acting within the scope of their authority, and that none of their actions violated any of Ms. Brown's rights during her arrests or her criminal hearings. Ms. Brown alleges that the officers violated her rights by stopping her for "bogus" reasons, for allegedly pulling her pants down during the stop, for locking her out of the courthouse, and for wrongly jailing her.

Defendants argue that Ms. Brown has not cited to a factually analogous case holding that Defendants' specific conduct was unconstitutional. The Court agrees with this assertion. Ms. Brown has cited some Supreme Court case law, but none of it "squarely governs" Defendants' conduct at issue. *See Cope*, 3 F.4th at 204. She makes no argument or clear indication on how the case law she cites classifies Defendants' particular actions as violations beyond debate. *See Morrow*, 917 F.3d at 874. Clearly established law must not be defined at a high level of generality. *See City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 613 (2015) ("Qualified immunity is no immunity at all if clearly established law can simply be defined as the right to be free from unreasonable searches and seizures.").

Ms. Brown asserts her First Amendment right was violated, and she states she faced "retaliation for protected petitioning" and she cites *Hartman v. Moore*, 547 U.S. 250 (2006) without any further explanation on how the case applies to her allegations. In *Hartman*, the Supreme Court discussed whether "a plaintiff in a retaliatory-prosecution action must plead and

10

show the absence of probable cause for pressing the underlying criminal charges." *Hartman*, 547 U.S. at 257 (2006). The Court finds no relation between the *Hartman* case and Ms. Brown's First Amendment allegations. *See id.* at 265-66.

Ms. Brown also asserts her Fifth and Fourteenth Amendment rights were violated because she experienced a "denial of liberty without due process, suppression of exculpatory evidence" pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). This is the sum of her explanation of how the case clearly establishes her violated Constitutional right. In *Brady*, the Supreme Court held that the suppression of "evidence favorable to the accused upon request violates due process where the evidence is material." *Brady*, 373 U.S. at 87. The state court records indicate that Ms. Brown attended multiple hearings for her criminal charges and was convicted at a trial on the merits. No evidence or allegations by Ms. Brown express that she was denied due process and that evidence was suppressed despite her request as discussed in *Brady*.

Ms. Brown also claims her equal protection and substantive due process rights were violated purposefully, and due to a "degrading sexual assault under color of law" pursuant to *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). In *Lewis*, a motorcycle passenger was killed in a high-speed police chase and the Supreme Court explained how arbitrary due process violations that "shock the conscience" are analyzed and that shock in one context may not be shocking in another. 523 U.S. 833, 837, 845-51 (1998). The *Lewis* case does not cover "sexual assault under color of law" as Ms. Brown claims occurred to her, and it does not indicate that Defendants' specific conduct is squarely governed in this context to rebut their qualified immunity motion.

To clearly establish her Fourth Amendment rights, Ms. Brown cites *Terry v. Ohio*, 392 U.S. 1 (1968) and *Torres v. Madrid*, 141 S. Ct. 989 (2021) to show that she faced an "unlawful stop, warrantless arrest, [and] invasive sexual assault." In *Terry*, the plaintiff was stopped by police on

11

foot for suspicion of "casing a job" and the plaintiff was searched without a warrant for concealed weapons. *Terry*, 392 U.S. at 4-7. The Supreme Court held that a police officer's warrantless search of the outer clothing is allowed if the officer has reasonable suspicion of criminal activity and a reasonable fear for his own safety. *Id.* at 30. The case does not specifically discuss traffic stops or when a search constitutes sexual assault as Ms. Brown was required to show to rebut Defendants' qualified immunity defense.

As for the *Torres* case, it concerns a § 1983 action where police officers attempted to execute an arrest warrant and fired their weapons at the fleeing suspect. *Torres v. Madrid*, 592 U.S. 306, 309-10 (2021). The Supreme Court held that the "application of physical force to the body of a person with intent to restrain is a seizure, even if the person does not submit and is not subdued." *Id.* at 325. The *Torres* case is not factually analogous to Ms. Brown's claims, she was not fired upon, and the officers arrested her warrantlessly, unlike what occurred in *Torres*.

Ms. Brown cited no other case law in the qualified immunity context and she did not address any of her other alleged Constitutional violations. She failed to meet her burden of showing that existing precedent squarely governs Defendants' conduct. Defendants are entitled to qualified immunity for all of Ms. Brown's claims. *See Cope*, 3 F.4th at 204.

    e. **Municipal Liability**

All claims raised against other named defendants in their official capacities are treated by this Court as being asserted against the City of Hernando. *See Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009) ("[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Serv. Of New York*, 436 U.S. 658, 690 n. 55 (1978)). It is the duty of the trial judge to hold *pro se* complaints to less stringent standards than proper pleadings drafted by lawyers. *Hepperle*

*v. Johnston*, 544 F.2d 201, 202 (5th Cir. 1976). Ms. Brown is a *pro se* plaintiff, so while her claims fail when alleged against the Hernando Municipal Court and the Hernando Police Department, this Court will evaluate whether her claims have merit against the City of Hernando. "Denial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *Simmons v. Sabine River Authority Louisiana*, 732 F.3d 469, 478 (5th Cir. 2013). If the Court finds this case to lack merit, by reason of futility, it will not grant Ms. Brown leave to amend her complaint to sue the City of Hernando. Ms. Brown is suing Defendants for multiple alleged violations of her constitutional rights under 42 U.S.C. § 1983. She has opposed Defendants' motion for judgment on the pleadings by filing a response and an unpermitted sur-reply, so the Court interprets these actions as Ms. Brown alleging her best case against Defendants. *See Jacquez*, 801 F.2d at 792.

The 42 U.S.C. § 1983 standard differs in actions against municipalities. A municipality may only be held liable under § 1983 if "the governmental body itself subjects [that] person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks omitted) (quoting *Monell v. Dep't of Soc. Serv. Of New York*, 436 U.S. 658, 692 (1978)). Because such entities are only responsible for their own illegal acts, they cannot be vicariously liable for their employees' actions. *Connick*, 563 U.S. at 60; *Monell*, 436 U.S. at 698. To establish constitutional liability under *Monell*, a plaintiff must allege that (1) a constitutional violation occurred, and (2) an official policy or custom was the "moving force" behind the violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 579-80 (5th Cir. 2001); *Monell*, 436 U.S. at 694.

Ms. Brown asserts that the City of Hernando, through its agents, deprived her of her First, Fourth, Fifth, Sixth, Ninth, Eleventh, Thirteenth, Fourteenth, and Sixteenth Amendment rights. "[W]ithout a predicate constitutional violation, there can be no *Monell* liability." *Loftin v. City of Prentiss, Miss.*, 33 F.4th 774, 783 (5th Cir. 2022). Ms. Brown has asserted a multitude of constitutional violations, and at the judgment on the pleadings stage, the Court will accept her allegations of underlying constitutional violations against Defendants as true. *See Hughes*, 278 F.3d at 420 (holding that the district court must accept all allegations in the pleadings as true in the judgment on the pleadings stage of litigation).

A municipality may be held liable under § 1983 if the deprivation of a constitutional right was due to an official policy or custom. *Piotrowski*, 237 F.3d at 579. The relevant policy or custom need not be pled in exhaustive detail, but there must be enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2006). Official policy is "ordinarily contained in duly promulgated policy statements, ordinances or regulations" but may also be established by custom. *Piotrowski*, 237 F.3d at 579.

Even assuming Ms. Brown's assertions of constitutional violations are true, under *Monell*, she failed to sufficiently assert that an official policy or custom of the City of Hernando caused the violations. Ms. Brown claims the City of Hernando caused these violations due to a policy of failing to train officers "on body searches, allowing clerks to arbitrarily lock the courthouse, and permitting prosecutions without valid oaths of office." According to Ms. Brown, these assertions alone are signs of systemic deficiencies with the City of Hernando.

"To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must

14

contain specific facts.'" *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citing *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). Ms. Brown's complaint does not claim that the constitutional violations were caused by a policy or custom spread by the City of Hernando.

Her only mentions of policy or custom were included in her response to Defendants' Rule 12(c) motion, where she claims that there was a failure to train officers without asserting any facts on the City of Hernando's promulgated officer training policy. To show liability under a failure to train theory, a plaintiff must prove that "1) the [city] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Pena*, 879 F.3d at 623. Even accepting all of Ms. Brown's allegations as true, her claims against the City of Hernando must fail on the third deliberate indifference prong.

The "standard for [municipal] fault" is a "stringent" one, "[a] pattern of similar constitutional violations by untrained employees is ordinarily" required to show deliberate indifference. *Id.* (citing *Connick*, 563 U.S. at 62). Ms. Brown's only facts about lack of training pertain to her personal experience during her initial traffic stop arrest, she has not raised any specific facts that the City's failure to train its officers has led to multiple instances of constitutional violations. Suffice it to say, Ms. Brown has not plead enough facts to indicate that the City of Hernando failed to train its officers. As a result, Ms. Brown has failed to sufficiently plead the existence of a widespread policy or custom of the City of Hernando that caused her to face violations of her Constitutional rights. Without this showing of the policy or custom's existence,

Ms. Brown's § 1983 claims against the City of Hernando and its agents fail, and all her federal claims against Defendants must be dismissed.

### f. State Law Claims

Turning to Ms. Brown's state law claims, in cases such as this one, where all federal claims are dismissed prior to trial, 28 U.S.C. § 1367(c)(3) grants this court discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. In the Fifth Circuit, the "general rule" is that courts should "decline supplemental jurisdiction [over state law claims] when all federal claims are dismissed or otherwise eliminated from a case." *Certain Underwriters at Lloyd's v. Warrantech Corp.*, 461 F.3d 568, 578 (5th Cir. 2006). In concluding that it should follow the general rule in this case, this Court notes that § 1367(c) provides that:

> The district courts may decline to exercise supplemental jurisdiction [if] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Importantly, the four § 1367(c) factors are listed in the disjunctive, which means that only one of them needs to be met to grant a district court discretion to decline to exercise supplemental jurisdiction.

The Court will note that Ms. Brown's state law claims are not clearly distinct from her federal claims outside of a brief mention in her complaint [1] that sections of the Mississippi State Constitution were violated. Since the underlying federal claims are being dismissed, the Court will decline to exercise supplemental jurisdiction over Ms. Brown's state law claims.

### II. Motion to Strike Scandalous Material

Ms. Brown has filed a Motion to Strike Defendant's Scandalous Material under Rule 12(f) [37]. The scandalous material she seeks to strike is any reference to her alleged drug activity and

indictment that Defendants included and referenced in their motion for judgment on the pleadings [31]. The relevant federal rule governing motions to strike states the following: "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Fifth Circuit precedent holds that a "motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." *Thompson v. Texas Dep't of Crim. Just.*, 67 F.4th 275, 284 (5th Cir. 2023) (citing *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962) (citation omitted)).

Ms. Brown claims the references to her alleged drug activity are prejudicial, improper, and unrelated to her claims against Defendants. The referenced drug activity allegedly occurred during Ms. Brown's first arrest and traffic stop. The Court finds it difficult to believe that the drug charges are unrelated to Ms. Brown's current claims, as her claims and the drug charges stem from the same underlying arrest.

Pleadings are not scandalous for Rule 12(f) purposes merely because they offend the sensibilities of the plaintiff if they "are directly relevant to the controversy at issue and are minimally supported in the record." *United States v. Coney*, 689 F.3d 365, 379-80 (5th Cir. 2012). While Ms. Brown may find Defendants' inclusion of her drug charges scandalous, the charges are relevant to her claims against Defendants, and they are public records in the Hernando Municipal Court which the Court has judicially noticed. The Court will not strike references to Ms. Brown's alleged drug activity from Defendants motion for judgment on the pleadings.

### III. Other Motions

"A claim becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's*

17

*Bakeries*, 177 F.3d 380, 383 (5th Cir. 1999). Mootness is a threshold jurisdictional inquiry under Article III of the U.S. Constitution, which limits federal courts to adjudicating actual, ongoing controversies. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).

Defendants' Motion to Strike [44] Ms. Brown's sur-reply and Ms. Brown's Motion for Interlocutory Injunction [46] are both moot following this Court's decision to grant Defendants' motion for judgment on the pleadings and to dismiss Ms. Brown's underlying case.

## CONCLUSION

**ACCORDINGLY**, Defendants' Motion for Judgment on the Pleadings [31] is **GRANTED**. Ms. Brown's Motion to Strike Scandalous Material [37] is **DENIED**. Defendants' Motion to Strike Plaintiff's Sur-Reply [44] is **DENIED as moot**. Ms. Brown's Motion for Interlocutory Injunction and Temporary Restraining Order [46] is **DENIED as moot**. Ms. Brown's Federal claims against Defendants are **DISMISSED WITH PREJUDICE** and Ms. Brown's State law claims against Defendants are **DISMISSED WITHOUT PREJUDICE**.

A separate judgment in accordance with this order will be entered on this date.

**SO ORDERED** this the 5th day of November, 2025.

                                            /s/Michael P. Mills
                                            UNITED STATES DISTRICT JUDGE
                                            NORTHERN DISTRICT OF MISSISSIPPI